**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*United States District Courthouse*
*300 Quarropas Street*
*White Plains, New York 10601*

July 12, 2018

**REQUEST TO BE FILED UNDER SEAL**
**BY ECF AND EMAIL**

The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

      Re:   *United States v. Anton Saljanin*, S2 16 Cr. 420 (KMK)

Dear Judge Karas:

      The Government respectfully submits this letter in advance of the sentencing of the defendant, Anton Saljanin. As set forth in the parties' plea agreement and the Presentence Investigation Report ("PSR"), the Guidelines range is 57 to 71 months' imprisonment. The Probation Office recommends a sentence of 57 months' imprisonment, while the defendant requests a sentence of a year and a day. For the reasons set forth below, a sentence within the Guidelines range would be fair and appropriate.

**A.    Background**

      **1.    The Offense**

      On January 15, 2014, defendant Anton Saljanin and a co-defendant, Gjon Saljanin, stole a shipment of 1,195 computers that Anton Saljanin was hired to deliver from Massachusetts to public high schools in New Jersey. (PSR ¶¶ 14, 16-17). Throughout the course of the day, multiple phone calls were made between Anton Saljanin and another co-defendant, Ujka Vulaj, and between Gjon Saljanin and Vulaj. (PSR ¶ 17). Late that night, Anton Saljanin and Gjon Saljanin unloaded and stored the stolen computers at Vulaj's residence in Yorktown Heights, New York. (*Id.*). Anton Saljanin and Gjon Saljanin then drove the truck to a parking lot in Yorktown Heights, and soon thereafter drove the truck to a different parking lot in Danbury, Connecticut. (PSR ¶ 18).

      The next day, January 16, 2014, Anton Saljanin falsely reported to the Yorktown Police Department that the truck was missing from the Yorktown Heights parking lot. (PSR ¶ 19). During the investigation by the Yorktown Police Department, Anton Saljanin and Gjon Saljanin both falsely claimed that on January 15, they had driven the truck directly from Massachusetts to the parking lot in Yorktown Heights and had left it parked there overnight. (*Id.*). They did not

mention that they had first stopped at Vulaj's residence to unload the computers, or that the truck had been moved that night to the Danbury, Connecticut parking lot.

Vulaj, another co-defendant, Carlos Caceres, and other individuals sold the computers from the stolen shipment.  Vulaj sold some of the computers to Caceres, who in turn sold those computers to other individuals.  Vulaj sold the rest of the computers on his own and through other individuals.  (PSR ¶ 21).

Each computer had a retail value of approximately $1,000 and a wholesale value of $827.97, and as a result Anton Saljanin is responsible for $989,424.15 in losses.  (PSR ¶ 22).

Superseding Indictment S2 16 Cr. 420 (KMK) (the "Indictment") was filed on September 28, 2016, in four counts.  (PSR ¶ 1).  Count One charged Saljanin with a conspiracy, in violation of 18 U.S.C. § 371, to commit theft from an interstate shipment, interstate transportation of stolen property, and receipt, possession, and sale of stolen property, in violation of 18 U.S.C. §§ 659, 2314, and 2315.  (PSR ¶ 2).  Count Two charged Saljanin with theft from an interstate shipment, in violation of 18 U.S.C. §§ 659 and 2.  (PSR ¶ 3).  Count Three charged Saljanin with interstate transportation of stolen property, in violation of 18 U.S.C. §§ 2314 and 2 (PSR ¶ 4).  Count Four charged Saljanin with receipt, possession, and sale of stolen property, in violation of 18 U.S.C. §§ 2315 and 2.  (PSR ¶ 5).

On October 18, 2017, Saljanin pleaded guilty, pursuant to a plea agreement, to Counts One and Two of the Indictment.  (PSR ¶ 7).

**2.      The Presentence Investigation Report and Recommended Sentence**

In its Presentence Report, the Probation Office calculated Saljanin's adjusted offense level under the United States Sentencing Guidelines as 24, based on:

- a base offense level of 6;
- a 14-level enhancement for the loss amount involved;
- a 2-level enhancement because the offense involved an organized scheme to steal or to receive stolen goods that were part of a cargo shipment;
- a 2-level enhancement because the defendant was an organizer, leader, manager, or supervisor in the criminal activity;
- a 2-level enhancement because the defendant willfully obstructed, impeded, or attempted to obstruct or impede the administration of justice; and
- a 2-level adjustment for acceptance of responsibility.

(PSR ¶¶ 30-45).

The Probation Office found that Saljanin has 3 criminal history points, and is therefore in criminal history category II.  (PSR ¶ 50).  Based on an offense level of 24 and a criminal history category of II, the Guidelines range for Saljanin is 57 to 71 months' imprisonment.  (PSR ¶ 81). This calculation is consistent with the parties' plea agreement.  (PSR ¶ 7).

The Probation Office recommends a sentence of 57 months' imprisonment, to be followed by a term of 3 years of supervised release. (PSR at 18).

In the parties' plea agreement, Saljanin agreed to make restitution in the amount of $989,424.15. (PSR ¶ 7(n)). The Probation Office recommends that restitution in that amount be ordered to compensate the victim. (PSR at 22).

Finally, in the plea agreement, Saljanin admitted the forfeiture allegations with respect to Counts One and Two of the Indictment, agreed to forfeit a sum of money equal to $989,424.15 in United States currency, and consented to the entry of the Consent Order of Forfeiture annexed as Exhibit A to the plea agreement. (PSR ¶ 7(m)). The Probation Office recommends that a forfeiture order be entered. (PSR at 23).

**B.   Discussion**

**1.   Applicable Law**

The Guidelines are no longer mandatory, but they still provide important guidance to the Court following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). The Guidelines range is thus "the lodestar" that "'anchor[s]'" the district court's discretion. *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345-46 (2016) (quoting *Peugh v. United States*, 133 S. Ct. 2072, 2087 (2013)).

After making the initial Guidelines calculation, a sentencing judge must consider the factors outlined in Title 18, United States Code, Section 3553(a), and "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing outlined in 18 U.S.C. § 3553(a)(2). To the extent a district court imposes a sentence outside the range recommended by the Guidelines, it must "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (quoting *Gall*, 552 U.S. at 50).

**2.   A Guidelines Sentence Is Reasonable in this Case**

The applicable Guidelines range in this case is 57 to 71 months' imprisonment. The defendant's requested sentence of a year and a day would represent a sentence 79% below the bottom of the Guidelines range. Such a large deviation is not warranted. A sentence within the Guidelines range is sufficient, but not greater than necessary, to comply with the purposes of sentencing. The Section 3553(a) factors most applicable in this case include the nature, circumstances, and seriousness of the offense of conviction, the need to provide just punishment, the need to promote respect for the law, the need to afford adequate deterrence to criminal conduct, and the nature and characteristics of the defendant. None of these factors militates for Saljanin receiving the below-Guidelines sentence he seeks.

*First*, the nature, circumstances, and seriousness of the offense—the interstate theft and sale of nearly 1,200 computers—and the need for just punishment warrant a sentence within the Guidelines range. Here, the magnitude of the criminal scheme and Saljanin's role in it were

significant.    Saljanin  directly  participated  with  Gjon  Saljanin  in  stealing  the  shipment  of
computers,  transporting  them  across  state  lines,  and  storing  the  stolen  goods  at  Vulaj's
residence—all  critical  steps  in  the  scheme  to  profit  by  stealing  goods  from  an  interstate
shipment.  And Saljanin's role did not involve just a portion of the shipment of stolen computers
(as was the case for his co-defendant, Caceres).  Rather, Saljanin participated in the theft of the
entire shipment of nearly 1,200 stolen computers, which had a wholesale value of nearly one
million dollars.

        The seriousness of the offense is amplified here by the Saljanin's leadership role in the
offense.  Saljanin did not merely participate in the offense (as his brother did); instead, Saljanin
managed and organized the theft in several critical ways.  For example, it was Saljanin's job as a
driver for the transport company that gave him and his co-conspirators access to the computers.
Saljanin claims that "the initial idea to engage in this conduct came from" his co-defendant,
Vulaj.  (Def. Submission at 2).  The Court should reject Saljanin's attempt to minimize his role
in the crime, which flies in the face of common sense.  Saljanin was the one who knew of the
upcoming delivery job that would give him access to the shipment of computers.  (PSR ¶¶ 14-
15).  There is no reason to believe that Vulaj would have known about this opportunity for theft
unless Saljanin told him about it first.  Furthermore, only Saljanin—and not Vulaj—would have
been in a position to know whether Saljanin could commit the theft without repercussions from
his unusually forgiving employer.  (See Def. Submission, Exhibit A).  And unlike Vulaj, Saljanin
has a criminal history that includes a prior conviction for grand larceny and a prior instance of
being  fired  from  a  job  for  stealing  from  his  employer.   (PSR ¶¶ 48, 73).   Thus,  the  most
reasonable inference to draw from the facts of this case is that Saljanin proposed the theft to
Vulaj.

        In any event, the Court need not resolve this dispute because a sentence within the
Guidelines range is warranted even if, as Saljanin claims, Vulaj came up with the idea to steal
the shipment of computers.  Even as minimized, the magnitude of the scheme and Saljanin's
managerial and organizing role were significant.  See United States v. DeRiggi, 72 F.3d 7, 8 (2d
Cir. 1995) (affirming four-level leadership enhancement even though the defendant "may not
have been the scheme's inventor or originator").  For example, Saljanin recruited his brother to
assist him in the theft.  Saljanin also led the cover-up by falsely reporting to the police and his
employer that the truck was stolen, by directing his brother to lie to the police for him, and by
engaging in the charade of searching for and eventually finding the "missing" truck.  Saljanin's
additional culpability for this larger role in the conspiracy increases the need for just punishment.
See U.S.S.G. § 3B1.1 application note background (recognizing that "persons who exercise a
supervisory  or  managerial  role  in  the  commission  of  an  offense  tend  to  profit  more  from  it  and
present a greater danger to the public and/or are more likely to recidivate").

        The seriousness of the crime is further reflected in the devastating impact to the victim.
As a result of the defendant's crime, the company has incurred legal fees and a hike in insurance
premiums,  experienced  difficulty  in  obtaining  bank  financing,  suffered  from  reputational  harms.
Furthermore,  the  company  was  forced  to  lay  off  four  employees.   (PSR ¶ 26).   Thus,  the
seriousness of the crime gives rise to the need for just punishment.

        Saljanin's obstruction of justice also counsels in favor of a Guidelines sentence.  Saljanin
falsely  reported  to  the  Yorktown  Police  Department  that  the  truck  was  missing  from  the

Yorktown Heights parking lot.  (PSR ¶ 19).  He then continued to lie to the police in the course of its investigation.  Saljanin falsely claimed that he and his brother had driven the truck directly from Massachusetts to the parking lot in Yorktown Heights and had left it parked there overnight.  (*Id.*).  Saljanin also engaged in the charade of going on a search for the missing truck, falsely reporting to the police that he found the truck in a Danbury parking lot—and omitting the fact that he had placed the empty truck there the previous night.  (PSR ¶¶ 18, 20).  A defendant who commits a crime and then lies to law enforcement "in an unlawful attempt to avoid responsibility," as the defendant did here, "is more threatening to society and less deserving of leniency."  *Cf. United States v. Dunnigan*, 507 U.S. 87, 97 (1993) (recognizing that "a defendant who commits a crime and then perjures [him]self in an unlawful attempt to avoid responsibility is more threatening to society and less deserving of leniency").

Despite Saljanin's obstructive conduct, the Government stipulated in the parties' plea agreement that Saljanin should receive a 2-level reduction for acceptance of responsibility—even though defendants who obstruct justice ordinarily are not entitled to the adjustment.  *See* U.S.S.G. § 3E1.1 cmt. n.4.  The Government stands by the plea agreement.  But it bears noting that the acceptance-of-responsibility adjustment reduced the offense level from 26 to 24, which in turn reduced the applicable Guidelines range from 70 to 87 months' imprisonment to 57 to 71 months' imprisonment.  A further downward variance is not warranted.

*Second*, Saljanin's criminal history, the need for specific deterrence, and the need to protect the public from his further crimes support a Guidelines sentence.  Saljanin has two prior state-court felony convictions.  First, in 1992, Saljanin was convicted of criminal mischief in the third degree for attempting to flee a traffic stop and striking the police vehicle; he received a lenient sentence of 24 days in jail and probation.  (PSR ¶ 47).  Approximately ten years later, Saljanin conspired with others to steal two motor vehicles, which resulted in a conviction for grand larceny in the third degree and a sentence of 2 to 4 years' imprisonment.  (PSR ¶ 48).  Saljanin's prior sentences failed to deter him from stealing from stealing $2,500 from an employer.  (PSR ¶ 73).  They also failed to deter Saljanin committing the instant offense—a crime that represents a stark escalation from stealing two cars to stealing over 1,000 computers worth approximately $1 million.  As the Probation Office observes, Saljanin's history reflects a risk of recidivism and "demonstrates that he has a disregard for the law."  (PSR at 19).  There is little reason to believe that another lenient sentence, as Saljanin requests here, will deter him from committing crimes again in the future.  A sentence within the Guidelines range would account for Saljanin's disregard of the law and protect the public from his further crimes.  *See* 18 U.S.C. § 3553(a)(2)(C).

*Third*, the need for the sentence to promote respect for the law and to afford adequate deterrence further supports imposition of a sentence within the Guidelines range.  As the Second Circuit has explained, 18 U.S.C. § 2315, one of the statutes that Saljanin conspired to violate, "seeks to eradicate the interstate and international traffic in stolen goods and in doing so to protect and encourage legitimate trade."  *United States v. Trupin*, 117 F.3d 678, 684 (2d Cir. 1997); *see also id.* at 689 (opinion of Lumbard, J.) (dissenting in part on other grounds but agreeing that Section 2315 seeks to eliminate "the demand side of the market in stolen goods").  Indeed, in enacting Section 2315, Congress specifically sought to compensate for the fact that state and local authorities were less likely to punish the crime.  *See id.* at 684 (explaining that "the possession of goods that had crossed state lines after having been stolen could not be

effectively prosecuted by local authorities who did not have access to the original complainant or national subpoena power, much less a strong interest in prosecuting a local recipient of property stolen in another jurisdiction"). A Guidelines sentence in this case would reflect Congress' intent that those who steal interstate shipments, transport stolen goods across state lines, and sell stolen property be held fully accountable for their crimes. Such a sentence would also better deter others from stealing, receiving, and selling stolen goods, thereby reducing demand in the market for stolen goods, and send an important message promoting respect for the law.

On the other hand, the below-Guidelines sentence requested by Saljanin would diminish respect for the law and undermine general deterrence, as it would be seen as a slap on the wrist for a defendant involved in a scheme to steal and sell a huge shipment of cargo in interstate commerce. Such a sentence would be particularly problematic here because the diminished respect for the law would contribute to the very problems—under-enforcement of property crimes and growth in the market for stolen goods—that Congress sought to remedy.

*Fourth*, the history and characteristics of the defendant also support a Guidelines sentence. Saljanin cannot excuse the instant offense as a youthful indiscretion. At the time of the offense in 2014, Saljanin was a 41 year-old man with four children, and he should have known better than to commit this crime. (PSR ¶ 59). Nor can Saljanin excuse the instant offense as an act of financial desperation. Far from being, say, a penniless drug addict desperate to provide food and shelter for his family, Saljanin and his wife had stable employment generating steady incomes for years. (*See* PSR ¶¶ 58, 70). These circumstances make Saljanin more culpable for his crime, further supporting imposition of a Guidelines sentence.

To be sure, Saljanin's wife notes that Saljanin's incarceration will cause emotional and financial hardship for his family. (PSR ¶ 58). While the challenges his family might face as a result of his incarceration are regrettable, they do not warrant a variance in this case. *See, e.g.*, *United States v. Mavashev*, 455 F. App'x 107, 115 (2d Cir. 2012) ("[T]he emotional and financial hardship suffered by [the defendant's] family are no different than those suffered by the families of any incarcerated defendant who has children . . . ."); *United States v. Cutler*, 520 F.3d 136, 165 (2d Cir. 2008) ("[The defendant's] wife and children will no doubt face hardship, but this is true whenever family members are deprived of the company and/or support of a defendant who is incarcerated.").

*Finally*, the Court should reject Saljanin's request for leniency because he ███████████ ███████████████████████████ and "has performed well while on pretrial release." (Def. Submission at 2-3).





Saljanin claims that he has "performed well while on pretrial release." (Def. Submission at 3). But his submission demonstrates that he has been associating with criminals while released on bail in this case. (*Id.* at 2).[2] Saljanin's continued association with felons and would-be felons during pretrial release suggests that he will continue to associate with criminals after serving his sentence in this case, and thus continue to be presented with opportunities and the temptation to commit additional crimes. This reinforces the need for a Guidelines sentence to serve as adequate deterrence.

The attached photograph further contradicts Saljanin's claim of compliance with his conditions of release. The photo, which was publicly posted on a motorcycle club website on or about May 13, 2016, shows four individuals seated at a poker table in what appears to be a bar or a club, and on the table in front of them are what appear to be a total of four handguns (two revolvers and two semiautomatic pistols). Saljanin is the individual seated second from the right in the photo (wearing a white t-shirt and a black vest), and a black semiautomatic pistol is on the table directly in front of him, immediately adjacent to his left hand. According to a report prepared by an analyst for the Westchester County District Attorney's Office, the metadata associated with the digital image file containing the photo indicates that the photo was taken on or about May 4, 2016. At that time, Saljanin was already a convicted felon prohibited by federal law from possession a firearm, *see* 18 U.S.C. § 922(g)(1), and he was, moreover, on pretrial release in this case. Saljanin's conduct while on bail in this case further highlights the need for a Guidelines sentence to send a message that Saljanin must have respect for the law.



## C.     Conclusion

For the reasons set forth above, a sentence within the Guidelines range of 57 to 71 months' imprisonment would be sufficient, but not greater than necessary, to comply with the purposes of sentencing.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By:     /s/ Won S. Shin
Won S. Shin
Assistant United States Attorney
(212) 637-2226

Enclosures

cc:     Jeffrey P. Chartier, Esq.