RECEIVED
SEP 03 2020
U.S.D.C.
W.P.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

Case No. 16 Cr. 420 (KMK)

ANTON SALJANIN,

Defendant.

MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. 3582(c)(1)(A)

Defendant, ANTON SALJANIN, pro se, respectfully moves this Court to grant him compassionate release and a reduction in sentence pursuant to 18 U.S.C. 3582(c)(1)(A), the serious public health and epidemiological concerns regarding the transmission of COVID-19 in an institutional setting combined with his underlying medical conditions of hypertension, the conditions of confinement which makes him vulnerable to severe complications or death. Defendant asks the Court to impose a modified sentence of time served, and or alternatively time served and substitute the rest of his term for supervised release with a condition of home confinement.

I. Factual Background

On July 6, 2016 the Defendant pleaded guilty to one count of conspiracy to commit theft from an interstate shipment, a violation of 18 U.S.C. 371 and 18 U.S.C. 659, and a substantive count, theft from an interstate shipment pursuant to 18 U.S.C. 659 pursuant to a written plea agreement.

On July 16, 2018 the Court sentenced the defendant to 48 months imprisonment followed by three years of supervised release, restitution and forfeiture of $989,434.15 and a $100 special assessment. Defendant is serving that sentence at FCI Allenwood Low and has a projected release date of March 2, 2022.

Defendant did not pursue any direct appeal or any post conviction motions.

In April, 2020 Defendant submitted a request to the Warden for compassionate release. The Warden subsequently denied the request. More than 30 days has elapsed since the request was made.

Allenwood's dorm-style structure renders it unable to implement or enforce social distancing. The COVID-19 virus, now a pandemic, is highly contagious, and can be transmitted by asymptomatic, but infected individuals. There is much that is unknown about the virus and it continues to change and mutate. Those who have certain underlying medical conditions could experience complications ranging significant medical intervention and likely to die. The BOP lacks adequate tests to determine if inmates have COVID-19. In the housing unit inmates are using 8 working shows, 6 urinals, and 6 toilets for an institution that is overcrowded by 30% who use the same sinks further demonstrate the inability to implement and protect effective social distancing or other prophylactic mitigation. The Bureau of Prisons response to the COVID-19 pandemic has failed miserably. As of the date of this motion 116 inmates died, staff infections are up 14% and COVID-19 has reached 114 out of the 122 institutions including Allenwood Low. Breakouts of COVID-19 was reported at neighboring Lewisburg in which 51 inmates are ill, Loretto 31 inmates are ill. At Allenwood Low one inmate thus far has a laboratory confirmed positive test for COVID-19 that resulted from the Bureau of Prisons transferring prisoners in between institutions despite the stay in place order and it's claimed response. A CNN report branded Seagoville 'the hardest hit federal prison in the U.S. where more than 1300 of the roughly 1750 prisoner have tested positive for the virus. CNN, Inside the federal prisons who where three out of every four inmates have tested positive for coronavirus (Aug. 9).

At FCI Miami, in Florida, nearly half of the inmates reportedly have tested positive. Kareen Troitino, the FCI Miami corrections union president told ABC News that the virus was spread by one employee to inmate at the

facility and, within a day the cases went from one to four. ABC News, As coronavirus spreads through nations jails and prisons (Aug. 6). This occurred despite the Bureau of Prisons screening practices.

On August 18, 2020 while inspections of the institution was going on by outside officials, the Allenwood Associate Wardens (as there is no Warden currently present at the institution since April 15, 2020) became aware that a staff member at their warehouse tested positive. That staff member had contact with several inmates, who in turn had contact with inmates other inmates on the compound. The staff withheld the information to avoid scrutiny during the inspections. These actions demonstrate the lack of concern by the institution staff over the health and safety of the inmate population.

The Defendant suffers from hypertension which according to the CDC is at risk of catching and contracting COVID-19 combined with the conditions of confinement will result in death or serious and severe outcomes if contracted supported by multiple medical studies.

The Defendant asks the Court to grant him compassionate release and reduce his sentence to time served or alternative, time served with the remainder of his sentence on supervised release with a condition of home confinement.

While the Bureau of Prisons ("BOP") reports that there has yet to be an inmate diagnosed with the coronavirus at the facility, as of July 21, 2020, only 72 of the 1,077 [ 1 ] inmates had been tested for COVID-19. [ 2 ]. Despite it's action plan another outbreak occurred at FMC Carswell and Seagoville. (See News Attachments). Allenwood already had a run in with the Coronavirus in January, 2020 when an unknown virus penetrated the institution's walls that caused a lock down. Inmates experience similar symptons tot he coronavirus despite the institution staff calling it a "GI Illness" or "noro virus."

Nationwide, 122 inmates have died of the coronavirus while in the custody of the Bureau of Prisons. Over of 10,700 inmates have contracted COVID-19 in the custody of the BOP and continues to grow. As of July 2, 2020 the rate of infection within the BOP was 4.704% which is 5.82 times higher than that of the United States at large. See Charts below. Allenwood reported it's first coronavirus case on August 1, 2020. Id. Some of the institution's staff have refused to be tested but are being allowed to work even though they have come into contact with individuals with the virus because they do not want to loose 14 days of work. A second positive test of staff was detected at the Allenwood warehouse where that staff had contact with at least 6 inmates who entered into the institution and had contact with hundreds of inmates. Since the test was not laboratory confirmed, it has not been reported as per BOP policy.

COVID-19 Rate of Infection for Various Populations

| Location | Cases | Population | Infections/ 1,000 People | Infection Rate as Percent of Population |
|---|---|---|---|---|
| BOP Imprisoned Population | 6,863[3 ] | 144,776[4 ] | 47.40 | 4.7404% |
| United States | 2,724,640 | 329,886,925 | 8.26 | 0.8259% |
| China | 84,825 | 1,394,015,977 | 0.06 | 0.0061% |
| Italy | 240,961 | 62,402,659 | 3.86 | 0.3861% |

| | BOP has an infection rate of X times higher |
|---|---|
| Compared to the U.S. | 5.82 |
| Compared to China | 779.04 |
| Compared to Italy | 12.28 |

1 See https://www.bop.gov/locations/institutions/alf/.

2 See https://www.bop.gov/coronavirus/, last accessed on July 21, 2020.

3 Id.

4 Id.

5 Includes the number of BOP inmates who have tested positive for COVID-19, the number of BOP inmates who have recovered, and the number of BOP inmates who have died from COVID-19. Numbers obtained from www.bop.gov/coronavirus on a daily basis. There is good reason to believe that the numbers reported by the BOP understate the actual number of tested postiive cases. Compare M. Licon-Vitale, MCC Ward, and D. Edge, MDC Warden, Response to EDNY Administrative Order, 2020-14 (Apr. 7, 2020) at https://www.nyed.uscourts.gov/pub/bop/MDC_20200407+0420057.pdf (3 positive inmates at MDC Brooklyn) with COVID-19 Cases Federal Bureau of Prisons (Apr. 7, 2020) at www.bop.gov/coronavirus (2 positive inmates at MDC Brooklyn). U.S. v. Shkreli, 15-cr-1637 (KAM) (S.D.N.Y. 2020) BOP Brief conceded 2 deaths at Allenwood which is not reported on it's website due to COVID-19.

6 Numbers obtained on 7/2/2020 at 5:13pm from https://www.coronavirus.jhu.edu/map.html.

I. The First Step Act Grants the Court Broad Authority to Modify Defendant's Sentence to Home Confinement.

The First Step Act of December 2018 grants the Court broad authority to correct or modify a sentence upon reconsideration of the 18 U.S.C. 3553(a) sentencing factors when "extraordinary and compelling" reasons so warrant. Defendant moves the Court to convert his incarceration to a term of home confinement as a special condition of supervised release that will expire on Mar. 3, 2022 upon an amended judgment. See 18 U.S.C. 3582(c)(1)(A)(i). A defendant can seek recourse to the courts after there has been a lapse of 30 days from the Warden's receipt of the request.

"A court may then 'reduce the term of imprisonment' after finding that 'extraordinary and compelling reasons warrant such a reduction' and 'such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.'"' United States v. Ebbers, 2020 WL 91399, at *4, 02-CR-1144(VEC) (ECF No. 384) (S.D.N.Y. Jan. 8, 2020). "In making its decision, a court must also consider "the [sentencing] factors set forth in section 3553(a) to the extent that they are applicable."" Id. (quoting 18 U.S.C. 3582(c)(1)(A)).

Courts have noted that the Sentencing Commission's applicable policy statements on what constitutes "extraordinary and compelling reasons" to warrant a sentence reduction is anachronistic, because it has not been updated since passage of the FSA, but the courts continue to be guided by the Sentencing Commission's descriptions of "extraordinary and compelling reason." See, e.g. Ebbers, 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020); United States v. Asaro, 17-cr-127 (ARR), 2020 WL 1899221, at *4 (E.D.N.Y. Apr. 17, 2020). That said, the:

Sentencing Commission's statements do not constrain the court's independent assessment of whether "extraordinary and compelling" reasons warrant a sentence reduction in light of the First Step Act's amendments. United States v. Beck, 2019 WL 2716505, at *5-6 (M.D.N.C. June 28, 2019); see also Ebbers, 2020 WL 91399, at *4. Indeed, "the district courts themselves have the power to determine what constitute extraordinary and compelling reasons for compassionate release." United States v. Young, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020)(collecting cases).

II. Defendant Has Exhausted His Administrative Remedies

Defendant has exhausted his administrative remedies. The First Step Act ("FSA") expressly permits the defendant to move this Court to seek compassionate release, by which this Court may reduce his term of imprisonment upon an amended judgment. See 18 U.S.C 3582(c)(1)(A)(i). A defendant can seek recourse through the court after either (1) the BOP declines to file such a motion on his behalf; or (2) there has been a lapse of 30 days from the Warden's receipt of the defendant's request, whichever is earlier. Id. see also United States v. Alam, No. 20-1298, 2020 WL 2845694, at *2 (6th Cir. June 2, 2020).

compassionate release have the option to take their claim to federal court within 30 days, no matter the appeals available to them.).

More than 30 days have elapsed since Defendant's request for compassionate release was received by the BOP and was subsequently denied. Therefore, this Court has the authority to act to reduce Defendant's' sentence based on compassionate release.

---

[ ] Numerous courts have found that courts have the power to waive exhaustion. See United States v. Melanie Williams-Betbea, Dkt. No. 18 Cr. 78 (AJN) (SDNY June 2, 2020)(granting release to bribery/ fraud defendant at Danbury with serious medical issues, waiving exhaustion); United States v. Alberto Pena, No. 15 Cr. 551 (AJN), dkt. 340 (SDNY May 8, 2020)(granting release to 60-year old defendant with hypertension and hyperlipidimia who was convicted of violent armed robbery and had served about 2/3 of 84 month sentence; court waived exhaustion); United States v. Gerard Scarpta, Dkt. No. 18 Cr. 578 (AJN) (S.D.N.Y. Apr. 19, 2020)(finding court could waive exhaustion requirement and granting release); United States v. Wesam El-Hanafi, Dkt. No. 10 Cr. 162 (KMW), Dkt. No. 252 (S.D.N.Y. May 19, 2020)(releasing defendant convicted of material support of terrorism who had around 33 months remaining on 15 year sentence, based on hypertension and anti-phospholipid syndrome; waive exhaustion over government objection); United States v. Jeffrey Musumeci, No. 07 Cr. 402 (RMB), Dkt. 58 (SDNY Apr. 28, 2020) (granting release and waiving exhaustion requirements despite government objection); United States v. Phillip Smith, No. 12 Cr. 133 (JFK), Dkt No. 197 (S.D.N.Y Apr. 3, 2020)(finding court could waive exhaustion requirement and granting compassionate release; United States v. Zukerman, No. 16 Cr. 194, 2020 WL 1659880, at *1 (S.D.N.Y. Apr. 3, 2020)(waiving exhaustion requirement over government objection and granting release); United States v. Wilson Perez, No. 17 Cr. 513 (AT), Dkt. No. 98 (S.D.N.Y. Apr. 1, 2020)(granting release based on health issues and finding court could waive exhaustion requirements; government did not object based on defendant's medical condition); United States v. Sassine Razzouk, No. 11 Cr. 430 (ARR), Dkt. No 136 (E.D.N.Y. Apr. 19, 2020)(granting compassionate release following limited remand from circuit and finding court could waive exhaustion); United States v. William Sawicz, No. 08 Cr. 287 (ARR), Dkt. No. 66 (E.D.N.Y. Apr. 10, 2020)(granting release over government objection, waived exhaustion); United States v. Gileno, No. 19 Cr. 161 (BAV), 2020 WL 1916773, at *5 (D. Conn. Apr. 30, 2020)(finding that court can waive exhaustion requirement and granting compassionate release; government did not object); United States v. Carl Logan, No. 12 Cr. 307, 308 (LEK), Dkt. No. 179 (N.D.N.Y. Apr. 22, 2020)(finding court could waive exhaustion requirement and granting release).

Even courts not granting compassionate release have found that courts have the power to waive exhaustion in life threatening situations. United States v. Francisco Santibunez, 13 Cr. 912 (RJS) (S.D.N.Y. July 6, 2020); United States v. Haney, No. 19 Cr. 541 (JSR), 2020 WL 1821988, at *2 (S.D.N.Y. Apr. 13, 2020); United States v. Russo, No. 16 Cr. 441 (LJL), 2020 WL 1862294, at *5-6 (S.D.N.Y. Apr. 14, 2020); United States v. Livingston, No. 18 Cr. 416 (ENV), 2020 WL 1905202, at *1 (E.D.N.Y. Apr. 17, 2020)("In the context of such extraordinary life-threatening circumstances, the crafting of judge-made exceptions to a statutory exhaustion requirement is not only appropriate, but compelled by the higher authority and God-made injunction to act, as the statute would otherwise permit, to save human life.").

III. Defendant Has Established Extraordinary and Compelling Reasons Warranting His Immediate Release

There can be no dispute that based on CDC guidelines, Defendant is at higher risk for severe COVID-19 illness because of his underlying medical conditions. The Department of Justice itself has conceded that suffering from conditions on the CDC high-risk list amounts to extraordinary and compelling circumstances under 18 U.S.C. 3582(c)(1)(A)(i). In filings across the country, federal prosecutors have conceded that:

> [T]he Department of Justice ("DOJ") has taken the position that inmates who suffer from a condition identified by the Center for Disease Control and Prevention ("CDC") as putting them at higher risk for severe illness from COVID-19 and who are not expected to recover from that condition, present an "extraordinary and compelling reason" to be considered for compassionate release-even if that condition in ordinary times would not meet the terms of the policy statement.

Wise v. United States, 18-Cr-72 (ELH), 2020 WL 2614816, at *7 (D. Md. May 22, 2020); Dkt. No. 185 at 1. See also United States v. Wright, 17-CR-388 (TDC), 2020 WL 2571198, at *3 (D. Md. May 21, 2020)("The Government now agrees, based on recent Department of Justice guidance, that Wright's diabetes condition, and perhaps other medical conditions she presently has, could constitute "extraordinary and compelling reasons" under the circumstances of the COVID-19 pandemic."); United States v. Castaldi, 09-cr-59, Dkt. No. 146 at 3 (N.D. Il. May 18, 2020)("Given that defendant presents several CDC risk factors, as confirmed by medical records ... and the presence of active COVID-19 cases at the institution where he is housed, the government agrees that he has presented an extraordinary and compelling reason allowing compassionate release under 18 U.S.C. 3582(c)(1) and the applicable guideline policy statement, even if his condition in ordinary times might not allow compassionate release.")' United States v. Hird, 13-cr-39 (TJS), Dkt. No. 650 (E.D. Pa. May 19, 2020)(government concession that "the risk of COVID-19" to a vulnerable inmate "presents 'a serious physical or medical condition ... that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility").

Defendant is at this heightened risk while confined within the walls of FCI Allenwood Low where, despite the lockdowns, inmates continue to share telephones, computer terminals, showers and toilets in overcrowded housing units. The CDC has acknowledged that "there are many opportunities for COVID-19 to be introduced into a correctional or detention facility." Simply put, "there is a big difference between being confined at a prison where one has no control over measures taken to guard against the COVID-19 virus and being subject to home confinement where one can almost fully control all risks of exposure. United States v. Vence-Small, 18-CR-31 (JAM), 2020 WL 2214226, at *3 (D. Conn. May 7, 2020). Indeed, the lack of appropriate protocols have allowed at least one report inmate at Allenwood Low to test positive for the virus.

a. Defendant's Preexisting Conditions Render Him High Risk

Defendant is especially vulnerable to the deadly risks of COVID-19 because scientific studies have indicated that his preexisting conditions--all the more so, when taken together--increase the risk of severe infection and worse outcomes if he were to contract the virus. In short, the conditions of confinement at FCI Allenwood Low, significantly exacerbate the likelihood that he will contact COVID-19, which, given his vulnerability, may prove fatal.

[ ] Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities, Centers for Disease Control and Prevention (Mar. 23, 2020), at https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf

[ ] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html

[ ] "The extraordinary and compelling reason need not have been unforeseen at the time of sentencing in

(I). Hypertension

Defendant suffers from hypertension, a serious medical condition when combined with the COVID-19, his current conditions of confinement and if he were to contract it would diminish his ability to provide self-care in a correctional setting.

Since the beginning of the pandemic, hypertension has been identified as a common comorbidity of COVID-19, increasing an individual's vulnerability of suffering from severe illness or death. See, e.g, Kulkarni, et al, COVID-19 and Hypertension, Journal of Renin-Angiotensin-Aldosterone System (May 20, 2020), https://www.journals.sagepub.com/doi/full/10.1177/1470320320927851 (finding that amongst patients in China and Italy, hypertension was the most common co-morbidity in patients who developed a serious illness from the virus); Nadar, et. al., Managing Hypertension During the COVID-19 pandemic, Journal of Human Hypertension (May 14, 2020), https://doi.org/10.1038/s41371-020-0356-y (finding that "hypertension appears to be the most prevalent comorbidity among patients admitted with COVID-19 present in at least 30 to 49 percent of them" and that "hypertensive patients who developed COVID-19 are more likely to be admitted to hospital that normotensive individuals"); Wei-jie Guan, et al., Comorbidity and its impact on 1590 patients with COVID-19 in China: A Nationwide Analysis, European Respiratory Journal (May 14, 2020), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7098485 (finding that patients with any comorbidity yielded poorer clinical outcomes and that one of the most common comorbidities was hypertension); Safiya Richardson, et al., Presenting Characteristics, Comorbidities, and Outcomes Among 5700 Patients Hospitalized with COVID-19 in the New York City Area, JAMA (Apr. 22, 2020), https://jamanetwork.com/journals/jama/fullarticle/2765184 (finding that amongst patients hospitalized in New York City, the most common comorbidity was hypertension); Hospitalization Rates and Characteristics of Patients Hospitalized with Laboratory-Confirmed Coronavirus Disease 2019, CDC (Apr. 17, 2020), https://www.cdc.gov/mmwr/volumes/69/wr/mm6915e3.html (finding that hypertension is the most common comorbidity amongst hospitalized COVID-19 patients in the United States, with nearly 50 percent of adults hospitalized suffering from hypertension); Report of the WHO-China Joint Mission on Coronavirus Disease 2019 (COVID-19), https://www.who.int/docs/default-source/coronavirus/who-china-joint-mission-on-covid-19-final-report.pdf (finding that patients with comorbidities had higher rates of death and one of the most common comorbidity was hypertension).

Recent medical studies continue to highlight the correlation between severe illness from COVID-19 and hypertension. See e.g., et al., Association of hypertension and antihypertensive treatment with COVID-19 mortality; a retrospective observational study, European Heart Journal (June 5, 2020), https://pubmed.ncbi.nlm.nih.gov/32498076 (concluding that "after adjustment for confounders (including age and other health conditions) and compared with non-hypertensive patients, the hypertensive patients continue to demonstrate a two-fold relative increase in the risk of COVID-19 mortality").

The World Health Organization (WHO) continues to identify hypertension as a risk factor, Q & A: Older People and COVID-19, WHO (last visited Aug. 4, 20200, https://www.who.int/emergencies/diseases/novel-coronavirus-2019/question-and-answers-hub/q-a-detail/q-a-on-covid-19-for-older-people ("Older people and people of all ages with pre-existing medical conditions (such as diabetes, high blood pressure, heart disease, lung disease, or cancer) appear to develop serious illness more often than others").

Defendant has met his burden of showing extraordinary and compelling reasons justifying his early release. In fact, courts have granted release to an inmate who suffered from hypertension. United States v. Gardner, Crim No. JKB-09-0619, ECF No. 72 (D. Md. May 26, 2020); United States v. Whyte, Crim. No. RDB-10-0212, ECF No. 232 (D. Md. July 6, 2020) (granting compassionate release to an inmate suffering from hypertension and hyperlipidemia). In a recent decision where the court granted compassionate release to an inmate who suffered from hypertension, Judge Hazel noted a decision from the Northern District of New York where compassionate release was granted to an inmate with only hypertension. United States v. Cuevas, Crim. No. GJH-16-451, ECF No. 231 (D. Md. Aug. 3, 2020)(citing United States v. Salvagno, No. 5:02-CR-51 (LEK), 2020 WL 3410601 (N.D.N.Y. June 22, 2020). Judge Khan in Salvagno explained his decision by stating that, "[t]he Court does not define itself to the CDC website, because the CDC is not the only reliable source of information about COVID-19, there is a lack of consensus regarding COVID-19 risk factors, the CDC itself dos not purport to represent consensus views of the science surrounding COVID-19, and as the retraction of the "high blood pressure" guidance illustrates, the CDC frequently alters its online guidance in significant ways." Salvagno, No. 5:02-CR-51 (LEK), at *22. Defendant has attached additional cases in which district courts across the country have granted compassionate release for prisoners suffering from hypertension. See Exhibit 'A' for additional cases granting compassionate release based on hypertension.

IV. Defendant's inability to provide self-care is especially important because the facility has unreported cases, deaths, is overcrowded with no ability to practice effective social distancing and lacks inadequate testing.

The Defendant is unable to provide self-care within the environment of Allenwood because he is unable to practice effective social distancing and hygiene to minimize his risk of exposure. The Defendant is confined a dormitory style housing unit with 6 urinals, 6 toilets, and lives in cubicles with 3 people and is less than feet from other inmates. See United States v. Colvin, 19-179, 2020 U.S. Dist. LEXIS 57962 (D. Conn. Apr, 2020). The inability to provide self care is being unable to follow the recommended social distancing protocols. United States v. Amarrah, 2020 U.S. Dist. LEXIS 80396 (E.D. Mich. May 7, 2020), United States v. Saad, No. 16-20197, 2020 U.S. Dist. LEXIS 74949 (E.D. Mich, May 2020); Miller v. United States, 2020 U.S. Dist. LEXIS 62421 (E.D. Mich. May 2020); United States v. Perez, 2020 U.S. Dist. LEXIS 57265 (S.D.N.Y. Apr. 5, 2020).

In Perez, the Court reasoned that confined to his cell suffering serious debilitation from surgery, the inmate. "cannot provide self care because he cannot protect himself from the spread of a dangerous and highly contagious virus." See also United States v. Campagna, 2020 U.S. Dist. LEXIS 54401 (S.D.N.Y. Mar. 23, 2020) (holding that a defendant's compromised immune system in the context of the pandemic "diminishes the ability to provide self care within the environment of the [facility].

The Government may offer certain prison-practice to show they know COVID-19 and have sough to reduce those risk. However courts have detailed out in grants of compassionate release in other cases have found that despite the BOP's efforts, they are fighting a losing battle. See Exhibits - FMC Carswell and Seagoville. "With shockingly limited available testing and inability to distance inmates, COVID-19 is going to continue to spread, not only among the inmate population, but also among the staff." Other courts have noted the "obvious short comings" in the BOP's COVID-19 Action Plan:

> First, testing inside prisons has been scant except for people who self-report symptoms which means that statistics about the number of infections already in the BOP facilities are largely meaningless. And second, the plan provides no additional protections for high risk individuals." ... "[E]ven in the best run prisons, officials might find it difficult if not impossible to follow the CDC's guidelines for preventing the spread of the virus among inmates and staff, practicing fastidious hygiene and keeping a distance of at least six feet from others." United States v. Atkinson, 2020 WL 1904585, at *3 (D. Nev. 2020)(quoting United States v. Esparza, 2020 WL 1696084, at *2 (D. Idaho Apr. 7, 2020)(internal citations and footnotes omitted). A BOP OSHA complaint filed March 31, 2020 by a correctional officer's union as an "imminent danger report," suggests staff agree with the foregoing assessment of the BOP's response: The agency's actions ... are proliferating the spread of a known and deadly contagion both within our prison system and to your surrounding communities..."

Reportedly as of July 2, 2020 of the 32,194 inmates tested, a mere 20.1% of the inmate population, 29% of the tests were coming back positive. The infection has penetrated 114 BOP institutions, more than 3 in 4 facilities. There are over 10,000 cases "reported" with 4,000+ inmates and 347 staff active cases, a large increase from prior weeks. Brandon Solar, Ph. D., et al. COVID-19 Case and Deaths in Federal and State Prisons, Journal of American Medical Association, July 31, 2020; bop.gov, COVID-19 Corona virus.

At Allenwood Low, the facility has only testified only 75 of its 1080 inmates, which amounts to just over 2.5% of the population at the facility. As Judge Rakoff recently noted even while commending the lack of positive cases at the facility, "this may have also been affected by the law rate of testing." United States v. Austin, 06-CR-991 (JSR), 2020 WL 3447521, at *7 (S.D.N.Y. June 22, 2020). Further, courts in this Circuit and across the country have granted compassionate release even in facilities without any documented positive cases. As Judge Ross recognized in one such case, "[i]t is possible that undetected cases are present in the facility." United States v. Asaro, 17-CR-127 (ARR), 2020 WL 1899221, at *3 (E.D.N.Y. Apr. 17, 2020); see United States v. Feucht, 11-CR-60025, Dkt. 53 (S.D. Fla. May 28, 2020)(granting compassionate release despite no confirmed cases at FCI Jessup because "[z]ero confirmed cases is not the same thing as zero COVID-19 cases" (citation

omitted); United States v. Atkinson, 19-CR-55 (JCM), 2020 WL 1904585, *2-4 (D. Nev. Apr. 17, 2020)(granting compassionate release notwithstanding that FCP Atwater had seen no cases of COVID-19); Amarrah, 17-CR-20464 (JEL), 2020 WL 2220008 (E.D. Mich. May 7, 2020)(releasing medically vulnerable inmate from FCI Loretto despite no reported COVID-19 cases at the facility); see also United States v. Burrill, 17-CR-491 (RS), 2020 WL 1846788, at *4 (N.D. Cal. Apr. 10, 2020); United States v. Ben-Yhwh, 15-CR-830 (LEK), 2020 WL 1874125 (D. Haw. Apr. 13, 2020). As of August 1, 2020 Allenwood reported it's first laboratory confirmed case of COVID-19, but has not engaged in any protocol testing to address asymptomatic individuals.

The risk is far from speculative when it comes to the Defendant. Further, post infection complications in serious COVID-19 cases (such as when a person is intubated and on a ventilator) include acute respiratory distress syndrome, a potentially life-threatening lung injury, and lung scarring that can cause "permanent damage." See e.g., Here's the Damage Coronavirus (COVID-19) Can Do to Your Lungs, The Cleveland Clinic (Mar. 20, 2020) https://www.health.clevelandclinic.org/heres-the-damage-coronavirus-covid19-can-do-to-your-lungs; Lois Parshley, The Emerging Long-Term Complications of COVID-19, Explained, Vox (May 8, 2020) https://www.vox.com/2020/5/8/21251899/coronavirus-long-term-effects-symptoms.

Even if Defendant were to survive COVID-19, his risk of life-long complications from the virus is higher because of his underlying medical conditions, as it puts him at higher risk of having a serious case and being placed on a ventilator, which in turn increases the risk of a lung injury, scarring, and lasting, debilitating effects. See Lisa Du, Virus Survivors Could Suffer Severe Health Effects for Years, Bloomberg News (May 12, 2020), https://www.bloomberg.com/news/articles/2020-05-12/covid-19-s-healtheffectscan-last-long-after-virus-is-gone.

For vulnerable individuals like Defendant, there is no place more dangerous right now than a federal prison. While the BOP has made efforts to reduce the spread of the virus throughout the federal prison system, the rate of infection is far higher within the BOP than within the community at large, and continues to spread at an alarming rate. Recent studies show that the rate of infection amongst prisoners was 5.5 times higher than the general population. See Brendan Saloner, PHD, et al., COVID-19 Cases and Deaths in Federal and State Prisons, JAMA (July 8, 2020) doi:10.100.1/jama.2020/1/2528.

V. 3553(a) factors weight in favor of modifying Defendant's sentence.

The Court must consider the facts underlying Defendants conviction, his record during incarceration, his current health, and the health risks to particularly vulnerable inmates created by the pandemic.

Releasing the defendant early would not materially undermine the goals of just punishment, or general deterrence, particularly when balanced against the significant risk to Defendant if he were infected. While the Court previously made determinations regarding an appropriate sentence, the same sentence is neither just nor necessary where there is a real risk that it could be transferred into a death sentence. See United States v. Field, 18-CR-426, 2020 U.S. Dist. LEXIS 78112 (S.D.N.Y. May 4, 2020)(Oeken, J.).

"[E]vidence of post sentencing rehabilitation may plainly be relevant to 'the history and characteristics of the defendant." Peppers v. United States, 562 U.S. 476, 491 (2011)(citing 18 U.S.C. 3553(a)(1). Indeed, a "number of courts have ... considered a defendant's rehabilitation in granting compassionate release." United States v. Brown, 4-05-cr-00227-1, 2020 U.S. Dist. LEXIS 87133 (S.D. Iowa Apr. 29, 2020). In connection with his motion for compassionate release, defendant has submitted his most recent Education Transcript demonstrating his rehabilitative programming. Exhibit 'C'.

As noted, during defendant's incarceration he has participated in a number of education programs, rehabilitative and job readiness programs as demonstrated by his most recent progress report. Other courts have considered similar accomplishments by an inmate sufficient to establish the inmate's rehabilitation, favoring a sentence reduction. See United States v. Decator, 2020 U.S. Dist. LEXIS 60109 (D. Md. Apr. 6, 2020) (finding that Section 3553(a)(1) factor favor compassionate release because, interalia, "[w]hile incarcerated, Deactor has participated in extensive education and rehabilitative programs,"); United States v. Perez, 2020 U.S. Dist. LEXIS 45635 (D. Kan. Mar. 11, 2020)(finding the inmates rehabilitation favored compassionate release where inmate has availed himself of various education programs").

WHEREFORE, FOR THE FOREGOING reasoned arguments, Defendant prays this Honorable Court grant his motion for compassionate release and impose a sentence of time served and or time served with the remainder of his sentence on supervised release with a condition of home confinement and order immediate release or issue an order to show cause without further delay.

Respectfully submitted this 27th day of August, 2020.

I declare the foregoing to be true and correct under penalty of perjury.

[signature]

ANTON SALTANIN, REG NO. 72752-054
LSCI Allenwood
P O Box 1000
White Deer, PA 17887

Release Plan

Residence

461 ELIZABETH RD YORKtown HGTS NY 10598

Mom - KATARINA SALJANIN DAD - NIKOLA WIFE KRISTINE SALJANIN

Financial Support

The defendant's family will provide any needed financial support until he is able to obtain employment and sustain himself.

Medical Care

The Defendant will enroll in Medicaid and or the Affordcare Care Act to meet his medical needs.

Application for compassionate release, pursuant to 18 U.S.C. Section 3582, is denied. Defendant has not substantiated his claims of hypertension and, in fact, the record suggests his assertion is contradicted by medical documents. Moreover, while many inmates and staff have tested positive at Allenwood, more recent data prove that nearly 1000 inmates and nearly 500 staff have been vaccinated, suggesting that the vaccine is available to Defendant. Moreover, consideration of the Section 3553(a) factors independently argues for denial of this application. Defendant committed serious crimes and hardly has a spotless criminal past. Granting early release would undermine the deterrent and respect-for-the-law factors that were crucial in the sentence the Court imposed.

So Ordered.

[signature]

4/19/21

EXHIBIT A

Cases granting Compassionate release based on hypertension/high blood pressure

United States v. Handy, 3:10-cr-00128-RNC-8, 2020 WL 2487371 (D. Conn. May 14, 2020);
United States v. Mattingly, 6:15-cr-00005-NKM-JCH, 2020 WL 2499707 (W.D. Va. May 14, 2020);
United States v. Lopez, 1:18-cr-02846-MV-1, 2020 WL 2489746 (D. N.M.. May 14, 2020);
United States v. Gutman, 1:19-cr-00069-RDB-2, 2020 WL 2467435 (D. Md. May 13, 2020);
United States v. Sedge, 1:16-cr-00537-KAM, 2020 WL 2475071 (E.D. N.Y. May 13, 2020);
United States v. Barber, 6:18-cr-00446-AA, 2020 WL 2404679 (D. Or.. May 12, 2020);
United States v. Rivernider, 3:10-cr-00222- RNC, 2020 WL 2393959 (D. Conn. May 12, 2020);
United States v. Ramirez, 1:17-cr-10328-WGY, 2020 WL 2402858 (D. Mass. May 12, 2020);
United States v. Ullings, 1:10-cr-00406-MLB-1, 2020 WL 2394096 (N.D. Ga. May 12, 2020);
United States v. Valencia, 1:15-cr-00163-AT-1, 2020 WL 2319323 (S.D. N.Y. May 11, 2020);
United States v. Foreman, 3:19-cr-00062-VAB-1, 2020 WL 2315908 (D. Conn. May 11, 2020);
United States v. Reddy, 2:13-cr-20358-MFL-LJM-1, 2020 WL 2320093 (E.D. Mich. May 11, 2020);
United States v. Pena, 1:15-cr-00551-AJN-1, 2020 WL 2301199 (S.D. N.Y. May 8, 2020);
United States v. Connell, 18-cr-00281-RS-1, 2020 WL 2315858 (N.D. Cal. May 8, 2020);
United States v. Vo, 15-CR-00310-BLF-2, 2020 WL 2300101 (N.D. Cal. May 7, 2020);
United States v.. Quintero, 6:08-cr-06007-DGL-1, 2020 WL 2175171 (W.D. N.Y. May 6, 2020);
United States v. Reid, 3:17-cr-001750-CRB-2, 2020 WL 2128855 (N.D. Cal. May 5, 2020);
United States v. Pabon, 2:17-cr-00165-AB-1, 2020 WL 2112265 (E.D. Penn. May 4, 2020);
United States v. Guzman Soto, 1:18-cr-10086-IT-1, 2020 WL 2104787 (D. Mass. May 1, 2020);
United States v. Etzel, 6:17-CR-00001-AA, 2020 WL 2096423 (D. Or. May 1, 2020);
United States v. Lacy, 3:15-cr-30038-SEM-TSH-1, 2020 WL 2093363 (C.D. Ill. May 1, 2020);
United States v. Ardila, 3:03-cr-00264-SRU-1, 2020 WL 2097736 (D. Conn. May 1, 2020);
United States v. Rivera, 1:86-cr-01124-JFK-4, 2020 WL 2094094 (S.D. N.Y. May 1, 2020);
United States v. Pinkerton, 15-CR-30045-3, 2020 WL 2083968 (C.D. Ill. Apr. 30, 2020);

United States v. Pinkerton, 15-CR-30045-3, 2020 WL 2083968 (C.D. Ill. Apr. 30, 2020);
United States v. Saad, 2:16-cr-20197-DPH-MKM-1, 2020 WL 2065476 (E.D. Mich. Apr. 29, 2020);
United States v. Brown, 4:05-cr-00227-RP-CFB-1, 2020 WL 2091802 (S.D. Iowa Apr. 29, 2020);
Jnited States v. Bertrand, 3:00-cr-00012-LC-1, 2020 WL 2179387 (N.D. Fla. Apr. 29, 2020);
Jnited States v. Musumeci, 1:07-cr-00402-RMB-1, Dkt. No. 58 (S.D. N.Y. Apr.. 28, 2020);
Jnited States v. Handy, PJM 04-0559, 2020 WL 2041666 (D. Md. Apr. 28, 2020);
Jnited States v. Harper, 7:18-cr-00025-EKD-JCH-1, 2020 WL 2046381 (W.D. Va. Apr. 28, 2020);
Jnited States v. Robinson, 3:18-cr-00597-RS-1, 2020 WL 1982872 (N.D. Cal. Apr. 27, 2020);
Jnited States v. Sanchez, 1:95-cr-00421-MGC-1, Dkt. No. 290 (S.D. Fla. Apr. 27, 2020);
Jnited States v. Dillard, 1:15-cr-170-SAB, Dkt. No. 71 (D. Idaho Apr. 27, 2020);
Jnited States v. Williams, 3:17-CR-121-(VAB); -1, 2020 WL 1974372 (D. Conn. Apr. 24, 2020);
Jnited States v. Coles, 2:00-cr-20051-SEM-TSH-1, 2020 WL 1976296 (C.D. Ill. Apr. 24, 2020);

nited States v. Jackson, 4:14-CR-00576, 2020 WL 1955402 (S.D. Tex. Apr. 23, 2020);
nited States v. Logan, 1:12-cr-00307-LEK-1, Dkt. No. 179 (N.D. N.Y. Apr. 22, 2020);
nited States v. Bess, 16-CR-156, 2020 WL 1940809 (W.D.N.Y. Apr. 22, 2020);
nited States v. Curtis, 1:03-cr-00533-BAH-1, 2020 WL 1935543 (D. D.C. Apr. 22, 2020);
nited States v. Scparta, 1:18-cr-00578-AJN-1, 2020 WL 1910481 (S.D.N.Y. Apr. 20, 2020);
nited States v. Joling, 6:15-cr-00113-AA-1, 2020 WL 1903280 (D. Or. Apr. 17, 2020);
nited States v. Gileno, 3:19-cr-161-(VAB), 2020 WL 1904666 (D. Conn. Apr. 17, 2020);
nited States v. Hammond, 1:02-cr-00294-BAH-1, 2020 WL 1891980 (D. D.C. Apr. 16, 2020);
ited States v.. Samy, 2:16-cr-20610-AJT-DRG-1, 2020 WL 1888842 (E.D. Mich. Apr. 16, 2020);
ited States v. Ben-Yhwh, CR 15-00830 LEK, 2020 WL 1874125 (D. Haw. Apr. 13, 2020);
ited States v. Sawicz, 1:08-cr-00287-ARR-1, 2020 WL 1815851 (E.D.N.Y. Apr. 10, 2020);
ited States v. Burrill, 17-CR-00491-RS-2, 2e (N.D. Cal. Apr. 10, 2020);
ited States v. Miller, 2:16-cr-20222-AJT-RSW-1, 2020 WL 1814084 (E.D. Mich. Apr. 9, 2020);
ited States v. Hansen, 1:07-cr-00520-KAM-2, 2020 WL 1703672 (E.D. N.Y. Apr. 8, 2020);
ited States v. Gross, 1:15-cr-00769-AJN-3, 2020 WL 1673244 (S.D.. N.Y. Apr. 6, 2020);
ited States v. Zukerman, 1:16-cr-00194-AT-1, 2020 WL 1659880 (S.D. N.Y. Apr. 3, 2020);
ited States v. Ghorbani, 18-cr-255-PLF (D.D.C. Apr. 3, 2020);
ted States v. Colvin, 3:19-cr-00179-JBA-1, 2020 WL 1613943 (D. Conn. Apr. 2, 2020);
ted States v. Rodriguez, 2:03-cr-00271-AB-1, 2020 WL 1627331 (E.D. Penn. Apr. 1, 2020);
ted States v. Muniz, 4:09-cr-00199-1, 2020 WL 1540325 (S.D. Tex. Mar. 31, 2020);
ted States v. Harpine, 6:91-cr-60156-MC-1, Dkt. No. 221 (D. Or. Mar. 27, 2020)

SALJANIN, Anton
Register No.: 72752-054
Lycoming B
Page 1

LB58

**Inmate Request to Staff Response**

This is in response to your Request to Staff received on April 16, 2020, wherein you request a Compassionate Release/Reduction in Sentence (RIS) based upon Specific Extraordinary and Compelling Circumstances, specifically, you are at high risk of contracting COVID-19.

In accordance with Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. 3582 and 4205(g), Elderly Inmates with Medical Conditions must be Age 65 and older. You are only 48 years old and as such are not eligible for early release under the PS 5050.50.

RIS consideration may also be given to inmates who have an incurable, progressive illness or who have suffered a debilitating injury from which they will not recover. Your case was reviewed and determined that you have no debilitating medical conditions.

In accordance with policy, the BOP should consider a Reduction in Sentence if the inmate is:

- Completely disabled, meaning the inmate cannot carry on any self-care and is totally confined to a bed or chair. You are able to maneuver within the living quarters. You are able to address your normal living needs.
- Capable of only limited self-care and is confined to a bed or chair more than 50% of waking hours. You are able to maneuver within the living quarters. You are able to walk to Health Services. You are able to walk to Food Service. You are able to address your normal living needs.

Accordingly, your request for a Compassionate Release/Reduction in Sentence is denied.

4-24-2020
Date

for [signature]
D. K. White
Warden

ALFA3 * INMATE EDUCATION DATA * 07-01-2020
PAGE 001 OF 001 * TRANSCRIPT * 13:08:25

REGISTER NO: 72752-054 NAME..: SALJANIN FUNC: PRT
FORMAT.....: TRANSCRIPT RSP OF: ALF-ALLENWOOD LOW FCI

---------------------------- EDUCATION INFORMATION ----------------------------

| FACL | ASSIGNMENT | DESCRIPTION | START DATE/TIME | STOP DATE/TIME |
|---|---|---|---|---|
| ALF | ESL HAS | ENGLISH PROFICIENT | 10-05-2018 1224 | CURRENT |
| ALF | GED HAS | COMPLETED GED OR HS DIPLOMA | 11-27-2018 1503 | CURRENT |

---------------------------- EDUCATION COURSES ----------------------------

| SUB-FACL | DESCRIPTION | START DATE | STOP DATE | EVNT | AC | LV | HRS |
|---|---|---|---|---|---|---|---|
| ALF | RHU AFRICAN AMERICAN HISTORY | 06-26-2020 | CURRENT | | | | |
| ALF | STRATEGIES FOR IMPROVING WELL | 06-20-2020 | CURRENT | | | | |
| ALF | RHU HOW GOVERNMENT WORKS | 06-19-2020 | 06-24-2020 | P | C | P | 3 |
| ALF | RHU WORLD WAR 1 | 06-19-2020 | 06-24-2020 | P | C | P | 3 |
| ALF | RHU BASICS OF BORROWING | 06-19-2020 | 06-24-2020 | P | C | P | 3 |
| ALF | RHU EARLY CIVILIZATIONS | 06-19-2020 | 06-24-2020 | P | C | P | 3 |
| ALF | RHU WORLD WAR 2 ACE COURSE | 06-19-2020 | 06-24-2020 | P | C | P | 3 |
| ALF | RHU FACES OF AMERICAN REVOLUTN | 06-19-2020 | 06-24-2020 | P | C | P | 3 |
| ALF | RHU EXPLORING GEOMETRY | 06-12-2020 | 06-18-2020 | P | C | P | 3 |
| ALF | RHU START A SMALL BUSINESS | 06-12-2020 | 06-18-2020 | P | C | P | 3 |
| ALF | RHU FAMOUS MALE SPORTS STARS | 06-12-2020 | 06-17-2020 | P | C | P | 3 |
| ALF | RHU PASS THE US CITZNSHP TEST? | 06-12-2020 | 06-17-2020 | P | C | P | 3 |
| ALF | RHU ACE GUIDE TO ONLINE SAFETY | 06-12-2020 | 06-17-2020 | P | C | P | 3 |
| ALF | RHU EXPLORE ALGEBRA | 06-12-2020 | 06-17-2020 | P | C | P | 3 |
| ALF | RHU EARTH SCIENCE ACE COURSE | 06-05-2020 | 06-11-2020 | P | C | P | 3 |
| ALF | RHU CHECKBOOK MATH | 06-05-2020 | 06-11-2020 | P | C | P | 3 |
| ALF | RHU EARLY NORTH AMERICA | 06-01-2020 | 06-05-2020 | P | C | P | 3 |
| ALF | RHU OUR SOLAR SYSTEM | 06-01-2020 | 06-05-2020 | P | C | P | 3 |
| ALF | NUTR DIGESTIVE & RESPIRATORY | 03-02-2020 | 03-17-2020 | P | C | P | 20 |
| ALF | CARDIO AND LYMPHATIC SYSTEM | 02-11-2020 | 02-25-2020 | P | C | P | 20 |
| ALF | ENDOCRINE SYSTEM & BLOOD | 01-07-2020 | 01-21-2020 | P | C | P | 20 |
| ALF | THE NERVOUS SYSTEM | 12-03-2019 | 12-17-2019 | P | C | P | 20 |
| ALF | EXERCISE PHYSIOLOGY (REC) | 10-30-2019 | 10-30-2019 | P | C | P | 1 |
| CAA SCP | VT HORTICULTURE | 07-02-2019 | 08-28-2019 | P | W | I | 160 |
| CAA SCP | BEGINNING PAINTING | 04-29-2019 | 05-31-2019 | P | C | P | 10 |
| CAA SCP | CLASS ON DAILY NUTRITION NEED | 04-29-2019 | 05-31-2019 | P | C | P | 15 |
| CAA SCP | BEGINNING GUITAR | 04-29-2019 | 05-31-2019 | P | C | P | 6 |
| CAA SCP | BEGINNING DRAWING | 04-29-2019 | 05-31-2019 | P | C | P | 10 |
| CAA SCP | INTRODUCTORY CROCHET CLASS. | 04-29-2019 | 05-31-2019 | P | C | P | 10 |
| CAA SCP | BEGINNING CALLIGRAPHY | 04-29-2019 | 05-31-2019 | P | C | P | 6 |
| CAA SCP | RPP4 US PROBATION | 03-08-2019 | 03-08-2019 | P | C | P | 1 |

AARP ✓
Money Smart ✓

Hispanic Americans not listed

G0000 TRANSACTION SUCCESSFULLY COMPLETED

Families Worried About Loved Ones in COVID-19 Outbreak at Federal Prison in Seagoville

Families are worried for their loved ones who may be incarcerated at FCI Seagoville after more than 1,100 have tested positive and one person died.
By Sophia Beausoleil   Published July 20, 2020   Updated on July 20, 2020 at 7:10 pm

The federal prison in Seagoville has the largest outbreak of coronavirus of any federal prison in the country and on Friday, the Federal Bureau of Prisons announced that an inmate died due to complications from COVID-19.

There are 1,798 men who are housed at the facility, according to BOP and 1,132 inmates and nine staff have tested positive for the disease.

"A week ago he told me he had tested positive for it and he didn't have any symptoms and was good so far, and then he called me yesterday and said he was having symptoms," said Angie Tatum of her brother, Rudolph, who is serving a 23-year sentence for a drug offense. "He can't smell anything, he can't taste anything, he's having body aches."

She said she's worried about her older brother given the situation and the fact someone died from complications last week.

According to a statement, the inmate who died was 65-year-old James Gianetta. He tested positive for COVID-19 on June 26 and two days later was evaluated at the Federal Correctional Institution (FCI) Seagoville for shortness of breath and other respiratory issues.

BOP said the he was taken to the hospital, later placed on a ventilator and died on Thursday. He had a pre-existing medical condition and had been at the Seagoville facility since August of last year.

Gianetta was sentenced in the District of Massachusetts to serve a 167-month sentence for conspiracy to distribute and possession with intent to distribute methamphetamine, distribution of 50 grams or more of methamphetamine and conspiracy to launder monetary instruments.

In a statement, BOP said in part, "The BOP is carefully monitoring the spread of the COVID-19 virus. As with any type of emergency situation, we carefully assess how to best ensure the safety of staff, inmates and the public. All of our facilities, including FCI Seagoville, are implementing the BOP's guidance on mitigating the spread of COVID-19. That guidance can be found on our website."

The federal bureau said it was following CDC guidance and all inmates who are positive for COVID-19 or symptomatic are isolated and provided appropriate treatment.

BOP said all institutions, including FCI Seagoville, have areas set aside for quarantine and isolation. Currently, they are not utilizing tents at this location.

"The majority of inmates who tested positive for COVID-19 are asymptomatic (positive with no symptoms) and do not require the level of care offered in a hospital setting," BOP said in a statement.

"We are deeply concerned for the health and welfare of those inmates who are entrusted to our care, and for our staff, their families, and the communities we live and work in. It is our highest priority to continue to do everything we can to mitigate the spread of COVID-19 in our facilities," said the Bureau of Prisons in a statement.

Case 7:16-cr-00420-KMK Document 170 Filed 09/02/21 Page 15 of 16

Time Reports on Worsening Outbreak at FMC Carswell

Over 500 Inmates Test Positive for Coronavirus at Texas Federal Medical Prison

BY ASSOCIATED PRESS JULY 21, 2020 11:04 PM EDT

(FORT WORTH, Texas) More than 500 women at a federal medical prison in Texas have tested positive for the coronavirus, in one of the largest confirmed outbreaks at a federal prison, the Bureau of Prisons said.

The number of confirmed cases at the Federal Medical Center-Carswell in Fort Worth jumped to 510 on Tuesday, just two days after the Bureau of Prisons reported that 200 women there had tested positive for COVID-19, the illness caused by the coronavirus. Only the federal prison in Seagoville, also located in the Dallas-Fort Worth area, had more infected inmates, with 1,156 cases as of Tuesday.

"We're like a whole bunch of hamsters in a cage chasing our own tails," said Carswell inmate Holli Chapman.

Three weeks ago, the prison had reported only three confirmed cases of the virus among inmates. One prisoner, Andrea Circle Bear, died in April. On July 12, 69-year-old Sandra Kincaid became the second woman to die there from the virus. The third, 51-year-old Teresa Ely, died Monday.

FMC-Carswell holds female inmates with medical and mental health issues. It currently has 1,357 prisoners. Since April, many inmates have told the Forth Worth Star-Telegram that they were concerned the virus could spread through the prison.

One of the inmates who has tested positive for the virus is Reality Winner, a former government contractor who is serving a five -year prison sentence after she pleaded guilty to mailing a classified report to a news organization.

Carswell's administration directed questions to the Bureau of Prisons. The agency said in a statement that it is taking precautions to stem the virus' spread.

"As with any type of emergency situation, we carefully assess how to best ensure the safety of staff, inmates and the public," the agency said. "All of our facilities are implementing the BOP's guidance on mitigating the spread of COVID-19."

Last week, several women at Carswell told the newspaper that the facility did not have enough sanitizing supplies or protective equipment. The women also noted that cells are not immediately cleaned after someone tests positive. Inmate Sandra Shoulders said mattresses used by women who have tested positive are piled up in a TV room.

"We feel basically abandoned," she said. "(Officers) are saying they're doing all this stuff for us, that they're in here with us. But they're not the ones in 24-hour quarantine, left in a 6-by-6 cell with three other people with 10 minute showers, 10 minutes to be on the phone or email to communicate with their families."

ANTON SALTANIN, REG# 72752-054
LOW SECURITY CORRECTIONAL INSTITUTION
ALLENWOOD
P.O. BOX 1000
WHITE DEER, PA 17887

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
300 QUARROPAS ST
WHITE PLAINS, NY 10601

SEP 03 2020